NATIONAL LABOR RELATIONS
BOARD, Plaintiff-Appellant,

v.

COMMITTEE OF INTERNS AND RESI-
DENTS, and New York State Labor Re-
lations Board, Defendants-Appellees.

No. 1447, Docket 77–6075.

United States Court of Appeals,
Second Circuit.

Argued July 20, 1977.

Decided Sept. 21, 1977.

Carl L. Taylor, Associate Gen. Counsel, N. L. R. B., Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, William Wachter, Asst. Gen. Counsel for Sp. Litigation, Ruth E. Peters, Atty., N. L. R. B., Washington, D. C., of counsel), for plaintiff-appellant.

Murray A. Gordon, New York City, for defendant-appellee Committee of Interns and Residents.

Norbert M. Phillipps, Gen. Counsel, New York State Labor Relations Bd., New York City, for defendant-appellee New York State Labor Relations Bd.

Gerald A. Bodner, New York City, on the brief, for amicus curiae Albert Einstein College of Medicine.

Carl William Vogt, Jay C. Counts, Washington, D. C. (Fulbright & Jaworski, Washington, D. C., of counsel), on the brief, for The Association of American Medical Colleges, amicus curiae.

Richard L. Epstein, Lawrence A. Manson, Chicago, Ill. (Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., of counsel), on the brief, for The American Hospital Association, amicus curiae.

Guggenheimer & Untermyer, New York City, on the brief, for Long Island Jewish-Hillside Medical Center, amicus curiae.*

Kenneth A. Harfenist, Misericordia Hospital, New York City, on the brief, for Misericordia Hospital Medical Center, amicus curiae.*

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, on the brief, for Beth Israel Medical Center, amicus curiae.*

Proskauer, Rose, Goetz & Mendelsohn, New York City, on the brief, for Greater New York Hospital Ass'n and Hospital Ass'n of New York State, amici curiae.*

Raphael, Searles, Vischi, Scher, Glover & D'Elia, New York City, on the brief, for Brookdale Hospital Medical Center, amicus curiae.*

Before MESKILL, Circuit Judge, and NEAHER ** and COFFRIN,*** District Judges.

MESKILL, Circuit Judge:

Prior to 1974, workers in voluntary, non-profit hospitals were excluded from coverage under federal labor law. In that year, Congress amended the National Labor Relations Act ("NLRA") to include the labor-management relations of all non-profit health care institutions. Pub.L.No.93–360, 88 Stat. 395 (1974) (amending 29 U.S.C. §§ 151 et seq. (1970)) ("the Health Care Amendments"). This case requires us to consider the preemptive effect of that change.

The Committee of Interns and Residents ("CIR") is a union of housestaff personnel. Its membership consists of doctors receiving post-graduate training in various hospitals.

The three categories of its membership are interns, who have just completed medical school and are generally involved in a one-year program; residents, who are in a longer training program leading to certification in a medical specialty; and clinical fellows, who have completed residencies and are being trained in medical sub-specialties. From 1957 to 1974, CIR represented the housestaff at a number of hospitals in New York City under the jurisdiction of the New York State Labor Relations Board ("SLRB").

After the passage of the Health Care Amendments in 1974, a number of housestaff organizations similar to CIR filed election petitions with the NLRB. In March, 1976, the NLRB issued its first decision on these petitions, Cedars-Sinai Medical Center, 223 N.L.R.B. 251 (1976). That case held that while housestaff "possess[ed] certain employee characteristics," they are "primarily engaged in graduate educational training," and thus were students rather than employees. On this basis, the NLRB concluded that housestaff should not be given collective bargaining rights, and dismissed the petition.

Several weeks later, CIR filed an election petition with the SLRB. In July, 1976, the SLRB dismissed the petition on the ground that federal labor law, as expressed in Cedars-Sinai, had preempted the field. In re Misericordia Hospital Medical Center, 39 S.L.R.B. No. 32 (1976).

The CIR then brought suit in New York State Supreme Court to compel the SLRB to accept jurisdiction. That court ruled that the SLRB was free to accept jurisdiction over the labor relations of housestaff. Committee of Interns and Residents v. New York State Labor Relations Board, 88 Misc.2d 502, 388 N.Y.S.2d 509 (Sup.Ct. N.Y. County 1976). The following month, the NLRB issued an opinion concerning a house-

* Eric Rosenfeld, Stanley Futterman (Poletti Freidin Prashker Feldman & Gartner), New York City, of counsel, on the brief.

** Hon. Edward R. Neaher of the Eastern District of New York, sitting by designation.

*** Hon. Albert W. Coffrin of the District of Vermont, sitting by designation.

staff union in which it explained that its intention in *Cedars-Sinai* had been to preempt the field. *Kansas City General Hospital,* 225 N.L.R.B. No. 14A, 93 L.R.R.M. 1362 (1976) ("Kansas City II"). In light of that decision, the state court vacated its prior decision. *Committee of Interns and Residents v. New York State Labor Relations Board,* 89 Misc.2d 424, 391 N.Y.S.2d 503, 505 (Sup.Ct. N.Y. County 1977).

In the interval between the two state court decisions, the NLRB began the action involved in the instant appeal. It sought to enjoin the holding of elections for housestaff officers under the aegis of the SLRB. *See NLRB v. Nash-Finch Co.,* 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971). The Board moved for a preliminary injunction, and the CIR cross-moved for summary judgment. Judge Stewart granted the CIR's motion, and denied any relief to the NLRB. 426 F.Supp. 438 (S.D.N.Y.1977). We reverse and remand.

## I.

Federal preemption in the labor field is particularly broad. *See Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); Cox, Labor Law Preemption Revisited, 85 Harv.L.Rev. 1337 (1972). As the Supreme Court stated in *Garner v. Teamsters Union,* 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953):

Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures

was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies. *Id.* at 490, 74 S.Ct. at 165–166. The few exceptions to this pervasive federal regulation fall into a small number of categories. Congress has explicitly given the states jurisdiction over some labor matters, such as damage suits for unfair labor practices. 29 U.S.C. § 187(b). Suits for state law torts committed during a labor dispute are traditionally matters of state concern, with only a peripheral federal interest. *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). Finally, Congress has established clear procedures by which the NLRB may cede jurisdiction over labor disputes to appropriate state authorities. 29 U.S.C. §§ 160(a), 164(c). As discussed below, this case does not fall within any of these exceptions.[1]

## II.

In *Cedars-Sinai,* the NLRB concluded that housestaff, "although they possess certain employee characteristics, are primarily students." 223 N.L.R.B. at 251. Accordingly, the Board concluded that collective bargaining was not mandated by the NLRA or the Health Care Amendments, and that the extension of such rights to a student-teacher relationship was contrary to national labor policy.

The district judge seized upon this distinction as the premise of a faulty syllogism. He concluded that, if housestaff were not "employees" as defined in § 2(3) of the NLRA, 29 U.S.C. § 152(3), then the CIR was not a "labor organization" as defined in § 2(5), 29 U.S.C. § 152(5). Since the NLRA applies only to "labor organizations," he concluded that the Board had waived its jurisdiction over housestaff. 426 F.Supp. at 449.[2]

1. At the time the NLRA was passed, it was thought that some labor disputes were beyond the scope of the commerce power. See 79 Cong.Rec. 9721 (1935) (exclusion of agricultural workers from definition of "employee" in

NLRA). There is no contention here that Congress is without power to regulate the labor relations of interns and housestaff.

2. We have recently criticized a similarly literal approach to the definitions contained in the

The judgment of the district court is in conflict with the expressed intent both of Congress and the NLRB. In *Cedars-Sinai,* the NLRB stated that "it will effectuate the policies of the Act to assert jurisdiction." 223 N.L.R.B. at 251. Moreover, §§ 10(a) and 14(c) of the NLRA contain explicit mechanisms by which the NLRB can cede jurisdiction to state labor authorities. 29 U.S.C. §§ 160(a), 164(c).[3] Had the NLRB intended to cede jurisdiction to the SLRB, it would have been simple to do so. There is no reason to assume the NLRB did implicitly what it could have done expressly.

The NLRB made this clear in a subsequent decision. In *Kansas City II, supra,* the Board adhered to its decision that housestaff are not "employees," but held that the hospital is nevertheless their "employer." The Board then stated:

Turning to the preemption question, we believe that it has now become necessary for us to state explicitly that which is, in our view, implicit in the Board's Decision in Cedars-Sinai; that is, at the risk of being somewhat repetitious, that the majority of this Board intended by its decision therein to find federal preemption of the health care field to preclude States from exercising their power to regulate in this area. It is our judgment that the Congress, in passing the 1974 health care amendments, simply made a determination that residents, interns, and fellows, inter alia, were not supervisors within the meaning of the Act, but left the question as to whether they were "employees" entitled to collective-bargaining rights for resolution by the Board in the exercise of its discretion. Having exercised its discretion in Cedars-Sinai, by finding residents, interns, and fellows to be primarily students and not "employees" within the

meaning of the Act, the Board confirmed, in our view, that it has not put hospital residents and interns beyond the reach of national labor policy, but has rather held that to extend them collective-bargaining rights would be contrary to that very policy.

93 L.R.R.M. at 1364 (footnote omitted).

■ Thus, it is clear from *Cedars-Sinai* and *Kansas City II* that the NLRB has not ceded jurisdiction over housestaff. Rather, the NLRB concluded that, although it has jurisdiction, it would be contrary to national policy to extend collective bargaining rights to housestaff because they "are primarily students."

■ There can be no doubt that the NLRB has power to prevent the states from granting collective bargaining rights to housestaff unions. In *Bethlehem Steel Co. v. New York State Labor Relations Board,* 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947), the Supreme Court was faced with a closely analogous situation. At the time, the NLRB had concluded that supervisors were "employees" within the meaning of the Act. *Maryland Dry Dock Co.,* 49 N.L.R.B. 733 (1943). However, it had also concluded that, as a matter of national labor policy, unions of supervisors should not be given collective bargaining rights under the Act. The supervisors union filed election petitions with the SLRB, which accepted jurisdiction.

■ The Supreme Court reversed on preemption grounds. For the Court, Mr. Justice Jackson wrote:

There was no administrative concession that the nature of these appellants' business put their employees beyond reach of federal authority. The Board several times entertained similar proceedings by other employees whose right rested on

NLRA. *Marriott In-Flite Servs. v. Local 504, Transport Workers of America,* 557 F.2d 295 (2d Cir. 1977).

Even under the district court's analysis, the injunction should have issued. In *Kansas City II,* it is apparent that the NLRB concluded only that housestaff were not "primarily" employ-

ees, and not that they lacked all employee characteristics.

3. These provisions are the exclusive means for ceding federal jurisdiction over activities covered by the NLRA. *Cf. Guss v. Utah Labor Board,* 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957).

the same words of Congress. Neither did the National Board ever deny its own jurisdiction over petitions because they were by foremen. . . . It made clear that its refusal to designate foremen's bargaining units was a determination and an exercise of its discretion to determine that such units were not appropriate for bargaining purposes . . . . We cannot, therefore, deal with this as a case where federal power has been delegated but lies dormant and unexercised.

Comparison of the State and Federal statutes will show that both governments have laid hold of the same relationship for regulation, and it involves the same employers and the same employees. Each has delegated to an administrative authority a wide discretion in applying this plan of regulation to specific cases, and they are governed by somewhat different standards. Thus, if both laws are upheld, two administrative bodies are asserting a discretionary control over the same subject matter, conducting hearings, supervising elections and determining appropriate units for bargaining in the same plant. They might come out with the same determination, or they might come out with conflicting ones as they have in the past. . . . But the power to decide a matter can hardly be made dependent on the way it is decided.

330 U.S. at 775, 67 S.Ct. at 1031 (citations omitted). *Bethlehem Steel* controls here. The NLRB has asserted its jurisdiction and denied collective bargaining rights. Under *Bethlehem Steel,* State power has been ousted by agency action taken pursuant to a Congressional mandate.

### III.

The district judge attempted to distinguish *Bethlehem Steel* by focusing on the decision that housestaff are not employees.[4] In doing so, he misconceived the issue.

The inquiry is not a narrow or technical one, but rather whether Congress intended to occupy the field. The court must focus on the activity regulated and determine if it has been brought within the scope of federal power. Thus, in *Bethlehem Steel, supra,* the Court held:

> The federal board has jurisdiction of the *industry* in which these particular employers are engaged and has asserted control of their labor relations *in general.* It asserts, and rightfully so, under our decision in [*Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947)], its power to decide whether these foremen may constitute themselves a bargaining unit. We do not believe this leaves room for the operation of the state authority asserted.

330 U.S. at 776, 67 S.Ct. at 1031 (emphasis added). The case at bar presents an identical situation. The federal regulation of labor law is so sweeping that it is inconceivable that the power of the states to act turns upon the way in which the agency decided a policy question. *Bethlehem Steel* explained that:

> [W]hen federal administration has made comprehensive regulations effectively governing the subject matter of the statute, the Court has said that a state regulation in the field of the statute is invalid even though that particular phase of the subject has not been taken up by the federal agency. . . . However, when federal administrative regulation has been slight under a statute which potentially allows minute and multitudinous regulation of its subject . . . or even where extensive regulations have been made, if the measure in question relates to what may be considered a separable or distinct segment of the matter covered by the federal statute and the federal agency has not acted on that segment, the case will be treated in a manner similar to cases in which the effectiveness of federal supervision awaits federal administrative regulation . . .

4. Under the district court's analysis, SLRB jurisdiction would be ousted only if the NLRB found that (1) housestaff were employees and (2) that they should be denied collective bargaining rights because of their "primarily" student character. It is doubtful that an important aspect of national labor policy could turn upon such a highly technical distinction.

The states are in those cases permitted to use their police power in the interval. . . . However, *the conclusion must be otherwise where failure of the federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute.*

330 U.S. at 774, 67 S.Ct. at 1030 (emphasis added; citations omitted).

▆ As the district court found, the unequivocal intent of Congress was to include all the labor relations of voluntary hospitals within the NLRA. 426 F.Supp. at 448.[5] Both the Senate and the House rejected amendments meant to ensure continued state jurisdiction in hospital matters. 120 Cong.Rec. 12946, 12995 (May 2, 1974); 16899–900, 16904–06, 16908–11 (May 30, 1974); 22575–76, 22581–82 (July 10, 1974); 22942–43 (July 11, 1974). This is in keeping with the ordinary rule of federal preemption in labor matters. Thus, Senators Mondale and Taft spoke in favor of the Health Care Amendments as a "national approach" to labor relations in hospitals. 120 Cong. Rec. 12944–46 (May 2, 1974). Senator Williams, the chief sponsor of the Health Care Amendments in the Senate, stated:

[T]he general purpose of the National Labor Relations Act, as interpreted by the Board and the courts, is to attempt to establish a uniform pattern of collective bargaining rules nationwide, without local variation.

120 Cong.Rec. 22575 (July 10, 1974). Similarly, the House sponsor, Representative Thompson, expressed the view that "it is apparent that the Federal law preempts any State law." 120 Cong.Rec. 22942 (July 11, 1974). Furthermore, the House rejected the "Quie Amendment," which would have ceded substantially less jurisdiction to the states then the CIR now claims for the SLRB. Finally, it is clear that Congress intended to include housestaff within the coverage of the Health Care Amendments. For example, in explaining Congress' rejection of amendments to the definition of "supervisor" in § 2(11), 29 U.S.C. § 152(11), the Senate Report stated:

The Committee has studied this definition with particular reference to health care professionals, such as registered nurses, interns, residents, fellows, and salaried physicians and concludes that the proposed amendment is unnecessary because of existing Board decisions.

S.Rep.No.93–766, 1974 U.S.Code Cong. & Admin.News p. 3951. Thus, Congress rejected the amendment because it considered housestaff within the scope of the Health Care Amendments.

It is clear that Congress, if it wished, could exclude housestaff from the definition of "employee"; it could also deny them collective bargaining rights under state law. *Beasley v. Food Fair of North Carolina,* 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974). Here, however, that decision has been made by the expert administrative agency to which Congress has delegated wide powers over national labor policy. It is thus clear that Congress has completely ousted state jurisdiction.

## IV.

A contrary holding would have a number of damaging effects. Primary among them would be the introduction of disparity in a labor policy designed to be national in

---

**5.** Even with the narrow issue focused on by the district court—exclusion from the definition of "employee"—the underlying Congressional intent can lead to opposite results for preemption purposes. Thus, the exclusion of agricultural workers in § 2(3), 29 U.S.C. § 152(3), is the result of a Congressional decision not to exercise federal power over farm labor. *See* 79 Cong.Rec. 9721 (1935); 93 Cong.Rec. 6599 (1947). Therefore, the states may assert jurisdiction over the labor relations of farms and their employees. *See United Farm Workers*

*Organizing Comm. v. Superior Court,* 4 Cal.3d 556, 94 Cal.Rptr.2d 263, 483 P.2d 1215 (1971) (In banc). However, the exclusion of supervisors in the same Section is the result of a Congressional determination that national labor policy requires that supervisors not be guaranteed collective bargaining rights. Accordingly, the Supreme Court has held that state jurisdiction over supervisors unions has been ousted by § 2(3). *Beasley v. Food Fair of North Carolina,* 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974).

scope. As the Supreme Court stated in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959):

> We have necessarily been concerned with the potential conflict of two law-enforcing authorities, with the disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes. But the unifying consideration of our decisions has been regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience.
>
> .    .    .    .    .
>
> Administration is more than a means of regulation; administration is regulation. We have been concerned with conflict in its broadest sense; conflict with a complex and interrelated federal scheme of law, remedy, and administration. Thus, judicial concern has necessarily focused on the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted. When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting.

*Id.* at 242–43, 79 S.Ct. at 778. If the NLRB erred in its treatment of housestaff unions, the solution is clearly not to create a patchwork of state-governed labor unions.[6]

There are already several areas of conflict and potential conflict between state and federal regulation. For example, the New York Labor Law provides for compulsory arbitration in labor disputes in voluntary hospitals. N.Y.Lab.Law §§ 716(2), (3), (4) (McKinney 1977), and the state courts may enjoin hospital strikes, *id.* § 716(9); on the other hand, the NLRA allows strikes and free collective bargaining, and hospital strikes come within the general prohibition of the Norris-LaGuardia Act. Thus, hospitals would be faced with contradictory duties and obligations if the CIR were to prevail. Similarly, the Health Care Amendments provide an elaborate mechanism for notice to be given by unions with grievances, 29 U.S.C. §§ 158(d), (g), while state law contains no such provisions.[7] Finally, a serious possibility of conflict is raised if a jurisdictional dispute should arise between the CIR and a union recognized under the NLRA.[8]

The CIR has vigorously attacked the policy underlying *Cedars-Sinai.* However, the wisdom of the NLRB decision is not before us; it is before the United States District Court for the District of Columbia, where the CIR has brought a lawsuit seeking to overturn *Cedars-Sinai* as an abuse of discretion by the NLRB. *Physicians National House Staff Association v. Murphy,* Civ. No. 77–0358 (D.D.C., filed Mar. 3, 1977). In that action, the CIR contends that its members are "employees," and asks for an injunction to compel the NLRB to assume jurisdiction and extend collective bargaining rights. If the NLRB abused its discretion in *Cedar-Sinai,* those proceedings will correct the error. If the Board's action is upheld, however, the CIR may not seek to circumvent it by proceeding before the SLRB. The Health Care Amendments

---

**6.** The CIR's argument, if accepted, would also create the possibility that housestaff in some states could not organize at all, while the CIR would be fully protected by New York law.

**7.** While this legislative scheme might be better served if housestaff were organized, that is a policy question for the NLRB or Congress, and it has no relevance to the issue of preemption.

**8.** This Court recently noted, in the context of a voluntary hospital, that "New York policy is fundamentally at odds with the National Labor Relations Act." *NLRB v. St. Luke's Hosp. Center,* 551 F.2d 476, 483 (2d Cir. 1976). The dispute there was over the related issue of a union's right, under a union security agreement, to represent a distinct class of professional employees who did not wish to be represented by a union of professional and technical workers. We held there that the agreement, valid under New York law, violated the NLRA.

brought housestaff within national labor policy. Accordingly, the district court's conclusion that the SLRB had jurisdiction over housestaff was erroneous and cannot stand. In view of the State Supreme Court's decision in *Committee of Interns and Residents v. New York State Labor Board,* 89 Misc.2d 424, 391 N.Y.S.2d 503 (Sup.Ct. N.Y. County 1977), acquiescing in the NLRB's finding of preemption in *Kansas City II, supra,* there is doubt regarding whether this controversy has become moot or whether an injunction barring the holding of an election under the aegis of the SLRB is necessary or appropriate. These matters have been neither briefed nor argued. We therefore leave them for consideration by the district court on remand.[9]

The grant of summary judgment is reversed. The cause is remanded to the district court for further proceedings not inconsistent with this opinion. Each party shall bear its own costs on appeal.

---

**9.** Justice Gellinoff dismissed the CIR's petition on January 6, 1977, and on January 20 he adhered to that ruling. On January 28, 1977, the NLRB prepared a motion for a stay of further proceedings in the instant action pending a final appellate determination of the state action. The NLRB argued that "[u]nless [the CIR's expected] appeal is successful, this Court will not need to rule on the Board's pleadings herein, since they are directed at a judgment which is now vacated." Unfortunately, this motion was not filed until February 3, 1977, the day after the district court filed its decision. Two days after the district court filed its decision, on February 4, the SLRB reversed its earlier decision, disregarded the decision of the State Court, and announced that, in view of the federal district court's decision, it would resume proceedings. Thus, if our view of the record is accurate, the district court's resolu-

tion of the merits on February 2 may have breathed new life into a controversy that was on the brink of mootness only weeks earlier. Such cases are inappropriate for resolution by the federal courts. *See DeFunis v. Odegaard,* 416 U.S. 312, 317, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (student about to graduate). Indeed, this case appears to be a good example of a phenomenon of which federal district courts must be wary, namely, the generation, or regeneration, of what appears to be a constitutional "case" or "controversy" by means of the litigation process itself. *Cf. City of Hartford v. Glastonbury,* 561 F.2d 1032, 1051–1052 n. 3 (2d Cir. 1977) (en banc; plurality opinion); *id.* at 1053 (Kaufman, C. J., concurring). The NLRB's motion for a stay was ultimately denied on March 7, 1977, for the obvious reason that it had come too late.