**UNIVERSITY OF VERMONT and State Agricultural College and National Labor Relations Board, Plaintiff–Intervenor,**

v.

**STATE OF VERMONT and Charles H. McHugh, Chairman, Vermont Labor Relations Board and Vermont–NEA, Defendant–Intervenor.**

Civ. A. No. 88–179.

United States District Court,
D. Vermont.

May 9, 1990.

---

Arthur P. Menard, Chelsea, Mass., Lee Liggett, Gen. Counsel, University of Vermont, Burlington, Vt., for plaintiff.

Geoffrey Yudien, Asst. Atty. Gen., State of Vt., Montpelier, Vt., for defendant State of Vt.

James S. Suskin, Montpelier, Vt., for defendant Vermont–NEA.

Margery E. Lieber, Corinna L. Metcalf, N.L.R.B., Washington, D.C., R. Jeffrey Behm, Asst. U.S. Atty., Burlington, Vt., for N.L.R.B.

## OPINION AND ORDER

COFFRIN, District Judge.

This suit is an action for declaratory judgment brought by the University of Vermont and State Agricultural College (the "University") against the State of Vermont (the "State"). In this action, the University seeks an order that 1987, No. 177 (Adj.Sess.), "An Act Relating to Labor Relations and [the] University of Vermont" ("H. 328"), is violative of the Supremacy Clause of the United States Constitution and is preempted by the National Labor Relations Act (the "NLRA" or the "Act"). The National Labor Relations Board (the "Board") was granted intervenor status and moved to dismiss the University's complaint. For the reasons stated below, the motion of the Board is granted and the University's complaint is dismissed.

### Background

In early 1988, the Vermont General Assembly passed H. 328, "An Act Relating to Labor Relations and [the] University of Vermont," amending 3 V.S.A. § 901 et seq. This legislation purportedly made the University and its employees subject to the Vermont Labor Relations Act. The governor signed the bill into law, effective July 1, 1988. See 1987, No. 177 (Adj.Sess.).

On July 14, 1988, the University filed a suit in this court against the State of Vermont seeking a declaratory order that H. 328 is preempted by the NLRA. The State filed a motion to dismiss, claiming that (1) declaratory judgment was inappropriate in this case because the Board alone is charged with deciding its jurisdiction on a case-by-case basis; (2) the University employees were the real parties in interest and were not joined in the lawsuit; and (3) the eleventh amendment to the United States Constitution protected the State from suit by the University in federal court. The University opposed the State's motion to dismiss.

On December 12, 1988, the Board filed a motion to intervene in the instant case, as well as a motion for a permanent injunction and declaratory judgment. The basis for these motions was that the Board had asserted jurisdiction over the University since 1976 and intended to continue doing so. *See University of Vermont and State Agricultural College,* 223 N.L.R.B. 423 (1976). At this juncture, the Board believed H. 328 was preempted by federal labor law.

On February 21, 1989, the Vermont Labor Relations Board petitioned the National Labor Relations Board for an advisory opinion regarding whether the Board would continue to assert jurisdiction over the University, arguing that the University was not an employer within the meaning of the National Labor Relations Act (the "NLRA" or the "Act"). Section 2(2) of the NLRA, codified at 29 U.S.C. § 152(2), states that, "[t]he term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include ... any State or political subdivision thereof." In a 1976 certification decision, the Board had held that the University was "a private non-profit educational institution ... [and] not 'a political subdivision' of the State." This finding was based on the "uncontroverted facts" presented by the University and a potential bargaining representative, both of whom consented to the Board's jurisdiction.[1] The Board accepted the February 1989 petition and the parties agreed

to stay the instant proceedings until the Board issued its advisory opinion.

In reaching its decision, the Board requested and received briefs and reply briefs from the University, the State and the Vermont–NEA[2] addressing the issue of whether the University was a political subdivision of the State and hence not an employer under the NLRA. In its brief before the Board, the University "specifically reserve[d] its right to request that the Board conduct hearings to properly adjudicate ... any factual dispute that may arise." Brief For the University Before the Board at 1–2. No hearing was held because the Board found the relevant facts as set out in the parties' written submissions to be "essentially undisputed" and adequate to resolve the question of the Board's jurisdiction. *See University of Vermont and State Agricultural College,* 297 N.L.R.B. No. 42 (1989) at 3.

On November 21, 1989, the Board issued its advisory opinion. The opinion held that the University was a political subdivision of the State and could not be an employer within the meaning of section 2(2) of the NLRA. Consequently, the Board concluded it could not assert jurisdiction over the University. *See id.*

The basis for the Board's opinion was that the University satisfied both prongs of the Supreme Court's test for determining whether an entity is a political subdivision.[3] Of primary importance in the Board's analysis were the undisputed facts that (1)

1. These proceedings eventually resulted in the Board certification of Local 42, International Brotherhood of Electrical Workers, AFL–CIO, as the exclusive collective bargaining representative of approximately twenty-five employees of Vermont Educational Television, a subsidiary of the University. Local 42 is the only recognized collective bargaining agent at the University.

2. Vermont–NEA is an affiliate of the National Education Association that seeks to organize a union among certain University employees. Vermont–NEA has been granted intervenor status in this suit. On January 6, 1989, the Vermont–NEA filed an unfair labor practice charge with the Vermont State Labor Board against the University. The charge alleges that the University violated Vermont labor law by terminating an employee engaged in protected activity. Be-

cause of this pending charge, the issues addressed in this opinion are not rendered moot by the Vermont–NEA's recent decision to withdraw its petition for representation before the Vermont Labor Relations Board.

3. In *N.L.R.B. v. Natural Gas Utility District of Hawkins County, Tennessee,* 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), the Supreme Court adopted the following test used by the Board to determine whether an enterprise is a political subdivision of a state. According to this test, an entity is a political subdivision if it is, "(1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Id.* at 604–05, 91 S.Ct. at 1749–50.

the University was created by a charter from the State, and (2) a majority of the University trustees were appointed by popularly-elected officials. The advisory opinion also noted numerous other undisputed connections between the University and the State.

On January 22, 1990, the Board filed its motion to dismiss that is the basis of this Opinion and Order. In that motion and subsequent memorandum, the Board argues that this court lacks subject matter jurisdiction to review the Board's decision, expressed in the advisory opinion, that the University is outside the Board's jurisdiction and that H. 328 is therefore not preempted by the NLRA.[4]

The University filed a response to the Board's motion on January 24, 1990. In this pleading the University claimed that:

> [G]ranting of such Motion [to Dismiss] would violate [the University's] inherent constitutional rights; would violate administrative due process; would violate the precepts of the preemption doctrine under the Supremacy Clause of the United States Constitution and, finally, would violate any and all rights of appeal from orders of the National Labor Relations Board.

University's Motion in Opposition at 1.

### Discussion

Resolution of this motion turns on whether and to what extent a district court has jurisdiction to review an advisory opinion of the Board issued in accordance with the Board's regulations. As far as our research reveals, this is an issue of first impression in the federal system. Because we believe that this court lacks subject matter jurisdiction to review the conclusions of the advisory opinion, and we find that due process was not violated by the lack of a hearing or judicial review in this case, the Board's motion to dismiss is granted.

The National Labor Relations Act was motivated by Congress' desire to ameliorate the disruptive effects of "industrial strife or unrest, which have the intent or the necessary effect of burdening or obstructing commerce." Findings and Declaration of Policy, 29 U.S.C. § 151. Congress determined that this policy goal could best be achieved by "encouraging the practice and procedure of collective bargaining." *Id.*

When the NLRA was considered by Congress, significant attention was invested in determining the proper role that courts should play in reviewing the collective bargaining process. In drafting the Wagner Act, which formed the basis of current federal labor law, Congress was influenced by the perceived inadequacies of the preceding National Industrial Recovery Act. The National Industrial Recovery Act allowed for direct judicial review of Labor Board investigations and certifications of collective bargaining units. Such direct review was seen as "productive of a large measure of industrial strife ...," and was particularly excluded from the Wagner Act. H.R.Rep. No. 1147, 74th Cong., 1st Sess. 7 (1935). *See generally, Leedom v. Kyne,* 358 U.S. 184, 191–94, 79 S.Ct. 180, 185–87, 3 L.Ed.2d 210 (1958) (Brennan, J., dissenting). Instead, section 9(d) of the Wagner Act allowed judicial review in the courts of appeals only after the filing of unfair labor practice charges. *See* 29 U.S.C. §§ 159(d), 160(e), (f). Thus, to obtain judicial review of Board certification proceedings, an employer would have to refuse to bargain with the Board-certified employee representative, thereby committing an unfair labor practice subject to judicial review in the courts of appeals.

When the Taft–Hartley amendments to the Wagner Act were considered in 1947, a House amendment provided for direct review of Board certification proceedings in the courts of appeals without requiring the somewhat cumbersome process of forcing an unfair labor practice before a circuit

---

**4.** Although the motion to dismiss alludes to mootness, *see* Board's Motion to Dismiss at 5–6, the Board's subsequent memorandum makes clear that the basis for the motion is that the district court lacks subject matter jurisdiction to review the Board's decision rendered in the advisory opinion.

court could review the dispute. One reason proffered for implementing such immediate judicial review was that the absence of this remedy was "unfair to ... the union that loses [a certification election], which has no appeal at all no matter how wrong the certification may be [and to] the employees, who also have no appeal." H.R. Rep. No. 245, 80th Cong., 1st Sess. 43 (1947). This amendment was rejected in conference with the Senate as being susceptible to abuse by parties seeking only to engage in "dilatory tactics" to avoid collective bargaining.[5]

Thus, in Congress' considered judgment, national labor policy would best be effectuated by only allowing eventual circuit court review of unfair labor practices, rather than by implementing immediate review in the district or circuit courts of Board actions concerning the Board's certification proceedings.[6] Courts have fully implemented this intent. As one court has noted, "[t]he cases are legion holding that, as a general rule, Board orders emanating from representation proceedings are not directly reviewable in court." *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1310 (D.C.Cir.1984).

In *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Supreme Court created a narrow exception to this rule that district courts lack subject matter jurisdiction to review decisions of the Board in certification proceedings. In *Kyne*, the Court held that the district court had jurisdiction to vacate a Board order that violated a "specific prohibition" of the NLRA that was "clear and mandatory."

*Id.* at 188, 79 S.Ct. at 183–84. In that case, the Board included both professional and non-professional employees in a unit which it found appropriate for collective bargaining. Section 9(b)(1) of the NLRA directs that, "the Board shall not (1) decide that any unit is appropriate for ... [collective bargaining] if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." 29 U.S.C. § 159(b)(1). The Board conceded it did not conduct a vote among the professional employees as plainly required by § 9(b)(1).

In affirming the district court's jurisdiction to vacate the Board order, the Court emphasized that:

> This suit is not one to "review," in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. Rather it is one to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act.

*Kyne*, 358 U.S. at 188, 79 S.Ct. at 184. Thus, *Kyne* review was intended as an extraordinary procedure reserved only for flagrant violations of the Act.

This conclusion was further clarified in *Boire v. Greyhound Corp.*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). In that case, the Supreme Court held:

> [I]n the normal course of events Board orders in certification proceedings under § 9(c) are not directly reviewable in the courts.... That this indirect method of

---

5. Floor statement by Senator Taft, 93 Cong. Rec. 6444 (1947). The minority report on the House version of the Taft–Hartley amendments reflected a similar view:

> Delay would be piled upon delay, during which time collective bargaining would be suspended pending determination of the status of the bargaining agent. Such delays can only result in industrial strife.

H.R.Rep. No. 245, 80th Cong., 1st Sess. 94 (1947) (minority report).

6. As Justice Brennan wrote:

> Congress concluded that the chance for industrial peace increased correlatively to how quickly collective bargaining commenced. For this reason Congress ordained that the

courts should not interfere with the prompt holding of representation elections or the commencement of collective bargaining once an employee representative has been chosen. Congress knew that if direct judicial review of the Board's investigation and certification of representatives was not barred, "the Government can be delayed indefinitely before it takes the first step toward industrial peace." Therefore, § 9(d) was written to provide 'for review in the courts only after the election has been held and the Board has ordered the employer to do something predicated upon the results of the election.'

*Kyne*, 358 U.S. at 192, 79 S.Ct. at 186 (Brennan, J., dissenting) (footnotes omitted).

obtaining judicial review imposes significant delays upon attempts to challenge the validity of Board orders in certification proceedings is obvious. But it is equally obvious that Congress explicitly intended to impose precisely such delays.... *The Kyne exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law.*

*Boire,* 376 U.S. at 476–78, 481–82, 84 S.Ct. at 896–97, 899 (emphasis added).

In addition to the exception developed in *Kyne,* there are two other instances where district courts have been held to possess jurisdiction to examine the course of Board-directed certification proceedings. In *Fay v. Douds,* 172 F.2d 720 (2d Cir.1949), the Second Circuit held that district courts have jurisdiction to decide substantial claims that the Board has violated constitutional rights. *See also New York Univ. v. N.L.R.B.,* 364 F.Supp. 160, 166 (S.D.N.Y. 1973). In *McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), the Supreme Court held that district court review of Board certification decisions was available where Board action had foreign policy ramifications. The latter of these two "other" subjects of district court review clearly does not apply in this case. The former does apply and will be discussed below.

If the Board had decided in the course of certification proceedings that it lacked jurisdiction because the University was not an employer within the meaning of the NLRA, the district court would not have jurisdiction under *Kyne* to review or vacate that decision. As noted above, this form of review is reserved only for instances where the Board violates a clear statutory mandate. In deciding that the University was a "political subdivision" of Vermont and therefore not an "employer" under the NLRA, the Board did not act in clear contravention of the Act. The terms "political

subdivision" and "employer" are not defined in the Act or its legislative history. *See* 29 U.S.C. § 152(2); *Hawkins County,* 402 U.S. at 604, 91 S.Ct. at 1749. The issue of whether, under the facts of a particular case, an entity qualifies as an employer within the meaning of the Act is delegated to agency determination. The Board's decision one way or the other on this issue is not dictated by the Act but turns on the Board's expert application of the facts to the statute. This is not the sort of agency action manifestly beyond delegated powers for which *Kyne* review will lie. *See N.L.R.B. v. Hearst Publications, Inc.,* 322 U.S. 111, 130–31, 64 S.Ct. 851, 860–61, 88 L.Ed. 1170 (1944).

The cases support this conclusion. In *Boire,* the Supreme Court held that an operator of bus terminals could not bring suit in a district court to obtain review of the Board's decision that it was an "employer" under the NLRA. Instead, the employer would have to await union certification and then refuse to bargain with the employee representative, thereby committing an unfair labor practice. After a Board decision on the unfair labor practice complaint, the employer could appeal to the circuit court for review under § 9(d) of the Act. *Boire,* 376 U.S. at 481–82, 84 S.Ct. at 898–99. Again, the Court held that the *Kyne* exception is "not to be extended to permit plenary district court review ... whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law." *Id.* at 481, 64 S.Ct. at 899. *See also, Physicians Nat'l House Staff Ass'n v. Fanning,* 642 F.2d 492 (D.C.Cir.), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1980) (district court lacks subject matter jurisdiction to review Board's decision that hospital house staff are not employees under § 2(3) of the NLRA); *New York Univ. v. N.L.R.B.,* 364 F.Supp. 160 (S.D.N.Y.1973) (district court lacks subject matter jurisdiction to review Board's determination that university staff are not "supervisors" and are "employees" within the meaning of the

Act).[7]

Nor would the Board's denial of a hearing in § 9(c) certification proceedings constitute the sort of brazen violation of a clear statutory edict that would justify this court in asserting *Kyne* jurisdiction. Section 9(c) of the NLRA, setting out the procedures the Board is to follow in certification proceedings, is couched in seemingly mandatory language.[8] Nevertheless, it has never been interpreted in this manner.

In *New York Racing Ass'n v. N.L.R.B.*, 708 F.2d 46 (2d Cir.), *cert. denied*, 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983), the Second Circuit reversed a district court which held that § 9(c)(1) granted employers a statutory right to representation hearings. *Id.* at 55–56. As the court of appeals wrote, "[d]espite the use of the word 'shall' in section 9(c)(1) ... the section has been interpreted by the courts to afford the Board great latitude in determining whether to proceed with a hearing." *Id.* at 56. In *Nat'l Maritime Union of America v. N.L.R.B.*, 267 F.Supp. 117 (S.D.N.Y.1967), the district court held that it lacked jurisdiction to review a Board decision not to

process a representation petition filed by a union under § 9(c)(1). As that court held:

[Section 9(c)(1)] sets out the general steps to be followed in the processing of representation petitions: investigation; hearing; election; certification. Since the provision for each stage is proceeded by the word "shall," accepting the Union's literal interpretation would mean that the section imposes upon the Board a series of mandatory steps which it must follow in processing representation petitions. Section 9(c)(1) has never been interpreted in this manner; the Board has been permitted and has exercised considerable discretion in processing representation petitions.... Section 9(c)(1) is by no means so clear and specific that when the Board declines to assert its authority it is acting in defiance of an express statutory command, thereby vesting this court with jurisdiction to review its action [under *Kyne*].

*Nat'l Maritime Union of America*, 267 F.Supp. at 121–22, 124.

From the foregoing discussion, it should be clear that if the University was complaining of Board action taken in the

---

**7.** In *N.L.R.B. v. Committee of Interns & Residents*, 566 F.2d 810 (2d Cir.1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978), the Second Circuit reversed a district court's denial of an injunction, sought by the Board, against union certification hearings that were proceeding under New York State labor law. In denying the Board's requested injunction, the district court had interpreted a recent Board decision as excepting hospital house staff from the definition of "employees" under the NLRA, and thus from the jurisdiction of the Board. *See Cedar–Sinai Medical Center*, 233 N.L.R.B. 251 (1976). The court of appeals reversed, deferring to the Board's opinions in *Cedar–Sinai* and *Kansas City General Hospital*, 225 N.L.R.B. No. 14A (1976).

The court of appeals held that the Board's rulings in these cases was not that house staff were beyond the Board's jurisdiction, but rather that, because they were "primarily students," allowing house staff to form employee organizations under *either* federal or state labor law would impede federal labor policy. Thus, since the Board retained subject-matter jurisdiction, state labor proceedings on this issue were preempted by federal law and the injunction was appropriate. *See Committee of Interns*, 566 F.2d at 812–14. Since the Board was seeking an injunction to enforce its rulings, the issue of the district court's jurisdiction to review a Board

decision was not presented. The court of appeals noted that a suit had been brought by the house staff in the district court for the District of Columbia, seeking review of the Board's *Cedar–Sinai* decision. That suit was resolved in *Physicians Nat'l House Staff Ass'n, supra.*

Unlike the Board's opinion in *Cedar–Sinai*, the advisory opinion in this case expressly cedes jurisdiction over the University's labor affairs and clearly contemplates that the Vermont State Labor Board will assert jurisdiction. *See University of Vermont and State Agricultural College*, 297 N.L.R.B. No. 42 (1989) at 1–2.

**8.** Section 9(c)(1) of the NLRA, 29 U.S.C. § 159(c)(1), reads in relevant part as follows:

Whenever a petition shall have been filed ... the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

(Emphasis added.)

course of certification proceedings—either that the Board had denied jurisdiction based on an incorrect interpretation of the statutory term "employer," or had wrongly denied a hearing under § 9(c)(1)—there would be no subject matter jurisdiction for this court to review the Board's decision. However, as the Board concedes, the Board action at issue in this case was not taken in the course of representation proceedings. Instead, the disputed Board conduct occurred through the issuance of an advisory opinion, filed pursuant to Board regulations, years after the conclusion of certain certification proceedings involving the University. We believe this distinction is insignificant in this case.

The advisory opinion which is the subject of the Board's motion to dismiss was issued pursuant to a Board regulation reported at 29 C.F.R. § 102.98(b). That regulation reads as follows:

> Whenever an agency or court of any State or territory is in doubt whether the Board would assert jurisdiction over the parties in a proceeding pending before such agency or court, the agency or court may file a petition with the Board for an advisory opinion on whether the Board would decline to assert jurisdiction over the parties before the agency or the court (1) on the basis of its current standards, or (2) because the employing enterprise is not within the jurisdiction of the National Labor Relations Act.

Other regulations set out the procedure for petitioning the Board for an advisory opinion. *See* 29 C.F.R. §§ 102.99–102.104. Section 102.103 states that, "[n]o briefs shall be filed except upon special permission of the Board" pursuant to a petition for an advisory opinion. The regulations make no mention of a hearing as part of the process.[9]

■ There are no reported court cases which discuss the Board's advisory opinion process in any detail. Nor has our research revealed significant discussion of these regulations in any Board opinions.[10] The Board asserts that under 29 C.F.R. § 102.98 it is empowered to determine its own jurisdiction without hearing and without review by district courts. *See* Response of Board to the University's Opposition to the Board's Motion to Dismiss at 12–13. The agency's interpretation of its own regulations is binding on the court unless it is plainly erroneous or inconsistent with the text of the regulation itself. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). We cannot say that the Board's interpretation of its regulation is inconsistent or erroneous in this case. *See* 29 C.F.R. §§ 102.98, 102.103.

■ Nor does the Board's promulgation of advisory opinion rules to decide its jurisdiction exceed its rulemaking authority under 29 U.S.C. § 156.[11] Section 156 grants

---

9. The regulations establishing the advisory opinion process were promulgated pursuant to 29 U.S.C. § 156. That section reads as follows:

> The Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by the Administrative Procedure Act, such rules and regulations as may be necessary to carry out the provisions of this subchapter.

The University does not claim that the regulations at issue here were promulgated in violation of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

10. The Board has frequently declined to resolve definitional questions—such as that presented in the State's petition—through the advisory opinion process, saying that such "issue[s] do[ ] not fall within the intendment of the Board's advisory opinion rules." *Massachusetts Labor Relations Commission and Baystate Bus Corp.*, 236 N.L.R.B. 1357 (1978). *See also Int'l Union of Operating Engineers, Local No. 49 and the Catholic Cemeteries*, 295 N.L.R.B. No. 103 (1989); *St. Paul Ramsey Medical Center*, 288 N.L.R.B. No. 105 (1988); *Christ the King Regional High School*, 266 N.L.R.B. 738 (1983). However, where the "relevant facts alleged ... are essentially undisputed" the Board has used the advisory opinion process to decide issues similar to that raised in the instant case. *St. Paul Ramsey Medical Center*, 291 N.L.R.B. No. 114 (1988) (advisory opinion used to decide whether hospital is an "employer" under the NLRA).

11. The University does not specifically claim that the advisory opinion regulations exceed the Board's statutory authority. However, the University does assert that the failure of the advisory opinion process to allow for a hearing and judicial review before the decisions have "final" effect violates its statutory rights under the NLRA. *See* Opposition of University to Board's Motion to Dismiss at ¶ 11.

to the Board broad authority to make rules and regulations "as may be necessary to carry out the provisions of th[e Act]." Judicial review of Board regulations is limited to consistency with the Act and rationality. *N.L.R.B. v. Curtin Matheson Scientific Inc.*, —— U.S. ——, ——, 110 S.Ct. 1542, 1549–51, 108 L.Ed.2d 801 (1990).

We find the advisory opinion regulations to be entirely consistent with the purposes of the Act, at least as they were applied by the Board in this case. As the above-noted discussion of the legislative history of the Wagner and Taft–Hartley Acts indicates, Congress was concerned that allowing parties to obtain judicial review of certain board orders would often pointlessly delay the initiation of collective bargaining and thereby frustrate national labor policy. Because of this concern, Congress deliberately limited avenues of judicial review to the conditions set out in § 9(d) of the Act. 29 U.S.C. § 159(d). Thus, as discussed above, courts have interpreted Congressional intent to preclude district court jurisdiction over Board orders in representation proceedings in favor of eventual review in the courts of appeals after an unfair labor practice has been charged.

Since the advisory opinion process is limited to questions involving the Board's assertion of jurisdiction, it necessarily decides only those types of questions that Congress thought should be unreviewable in the district courts. Thus, the advisory opinion process comports with Congressional intent as expressed in the Act and its legislative history. Just as Board orders in representation proceedings are generally unreviewable in district courts—including those regarding whether an entity is or is not an employer, or should or should not get a hearing—so too should advisory opinions on such subjects be immune from review in the district courts.

■ The University has not cited any authority nor asserted any substantial arguments why these sorts of agency decisions should be beyond district court review in representation proceedings but subject to such review when, owing to some procedural irregularity, they arise in a different context. Section 156 grants the Board broad discretion to promulgate regulations designed to further the purposes of the Act. The advisory opinion process, at least as it was applied in this case, accords with a clearly-expressed Congressional intent to limit judicial review of certain types of Board decisions. Thus, we accept the Board's interpretation that this court lacks subject matter jurisdiction to review the advisory opinion. Although we are mindful that preclusion of judicial review of agency action is exceptional, *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), we find clear Congressional intent that Board jurisdictional issues be committed to agency discretion, 5 U.S.C. § 701(a)(1), (2), and be beyond court scrutiny except for the redress allowed in § 9(d).

The University asserts that if this court does not review the Board's decision, it is unlikely that it will have recourse in another federal court. This consideration does not alter our conclusion. In *Physicians Nat'l House Staff Ass'n*, appellants were hospital house staff who attempted to bring suit in district court challenging the Board's decision made in representation proceedings that they were not "employees" within the meaning of the Act. The house staff claimed that the district court should engage in *Kyne* review because there would otherwise be no judicial review of the Board's decision not to include them as employees in the bargaining unit.[12] The D.C. Circuit affirmed the district court's finding that it lacked jurisdiction. Citing the legislative history to the Taft–Hartley Act, discussed above, the court wrote:

> We agree that it may be unlikely that the correctness of these decisions will be tested in an unfair labor practice proceeding reviewable in a court of appeals, but we think this is not a reason to

---

12. Since, as a result of the Board's decision, the house staff would not be included in the unit ultimately certified for collective bargaining purposes, they would be in no position to refuse to bargain with the employer, and thereby obtain judicial review in the court of appeals for having committed an unfair labor practice.

permit District Court review. Congress has considered the likelihood that some Board decisions in representation proceedings may evade all judicial review. Nevertheless, it has rejected attempts to provide review in such cases.

642 F.2d at 499.

Similarly, in *New York Racing Ass'n* the Second Circuit held that a district court lacked jurisdiction to review a Board decision, made pursuant to § 14(c) of the Act, not to assert jurisdiction over the horse racing industry because of its insubstantial effect on commerce. Like the appellants in *Physicians Nat'l House Staff Ass'n*, the party seeking Board jurisdiction in *New York Racing Ass'n* claimed that, absent *Kyne* review, it would be unlikely to obtain any federal judicial review of the Board's decision. The court of appeals wrote:

> The Racing Association argues that it is unjust for the district court to have no jurisdiction in this case, because then the NLRB's 1980 representation decision will never be reviewable. In the ordinary case, as already indicated, review is merely delayed until after an election has been held and an unfair labor practice proceeding initiated; here however, this will obviously never occur, since the Board has refused to act at all. The short answer to his argument is that "not every governmental action is subject to review by judges." *United States ex rel. Kaloudis v. Shaughnessy*, 180 F.2d 489, 491 (2d Cir.1950) (L. Hand, Ch. J.) The Racing Association is in the same position as any party who seeks an election but is unsuccessful in persuading the Regional Director to order one. See e.g. *Physicians Nat'l House Staff Ass'n v. Fanning.*

*New York Racing Ass'n,* 708 F.2d at 56–57 (footnotes omitted).[13] Since considerations of lack of judicial review are not determinative in representation proceedings, they should not be dispositive in decisions on similar matters rendered through the advisory opinion process.

■ Having found that this court lacks subject matter jurisdiction to review the Board's advisory opinion under the NLRA, we now turn to the University's constitutional claims. The University asserts that granting the Board's motion to dismiss on the basis of the advisory opinion violates the University's due process rights to a hearing before the Board and to judicial review of the Board's opinion. Under the doctrine of *Fay v. Douds,* 172 F.2d 720 (2d Cir.1949), this court has jurisdiction to review claims of constitutional deprivations affected by the Board when such claims are not transparently frivolous.

■ The University has not demonstrated, either by argument or cited authority, that it has a liberty or property entitlement to a hearing before the Board when the Board decides its jurisdiction or to district court review of Board jurisdictional decisions. The NLRA and Board regulations, as discussed above, in no way require the Board to conduct a hearing prior to issuing an advisory opinion concerning its jurisdiction. As is also discussed above, Congress clearly intended to preclude district court review of the Board's jurisdictional decisions. Such decisions would be reviewed only if and when they were the subject of an unfair labor practice.

■ Federal courts are courts of limited jurisdiction, receiving their powers only from the Constitution or statute. *Bender v. Williamsport Area School Dist.,* 475

**13.** As the Second Circuit also wrote in *McLeod v. Local 476 Brotherhood of Industrial Workers,* 288 F.2d 198, 201 (2d Cir.1961) (denying district court jurisdiction to review a Board representation decision despite the lack of an alternative remedy):

> Congress, by its refusal to confer jurisdiction on the District Courts, and the courts, by their adoption of the general rule subject only to the ... [*Kyne* and *Fay*] exceptions ... have made the important decision that an occasional unreasonable action by the Board, though it goes uncorrected by the courts, is a lesser evil than would be the frustration of seasonable elections by a broadened exposure to litigation. As is the case with any general rule, its application to particular cases may result in an injustice. If those injustices occur frequently enough, and are serious enough, they may cause Congress to amend the legislation, or may cause the courts to invent additional exceptions.

U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Absent review for alleged constitutional violations, there is no general Constitutional right to judicial review of all agency action. *See e.g. N.L. R.B. v. United Food & Commercial Workers Union, Local 23, AFL–CIO,* 484 U.S. 112, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987) (decision of N.L.R.B. General Counsel to settle informally an unfair labor practice complaint is not subject to judicial review). While statutes will not be interpreted as precluding judicial review absent plain Congressional intent to do so, as discussed above, the drafters of the NLRA were clear in their intent to limit district court review of certain types of Board decisions. Decisions relating to the Board's jurisdiction made through the advisory opinion process, like § 9(c) proceedings, are delegated to agency discretion within the meaning of 5 U.S.C. § 701(a)(1), (2). Thus, the University cannot be said to be "entitled" to judicial review in this court. *See Florsheim v. Weinburger,* 346 F.Supp 950, 956 (D.D.C.1972) (advisory opinions of Federal Trade Commission are not subject to judicial review).

Nor has the University shown it has a liberty or property interest in the general issue of having the Board retain jurisdiction over it. In enacting the NLRA, Congress intended to give an expert agency broad discretion in implementing national labor policy and charged the Board with interpreting jurisdictional terms, such as "employer" that were left undefined in the statute. *See Beth Israel Hospital v. N.L. R.B.,* 437 U.S. 483, 500–01, 98 S.Ct. 2463, 2473–74, 57 L.Ed.2d 370 (1978). While abrogation of a clear and express provision of the statute might give rise to a claim that the University is entitled to access the Board's procedures, the manner in which the Board interprets a term such as "employer" does not. This issue lacks the "particularized standards or criteria," *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983), necessary to generate a legitimate claim of entitlement. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Even if the University had a liberty or property entitlement to having the Board continue to assert jurisdiction, the University has not shown that procedures above and beyond those provided by the Board's advisory opinion processes were warranted to protect that interest. In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court articulated a balancing test for determining what procedures are required before a person can be deprived of life, liberty or property. According to that test, the question of what process is due is decided by reference to the following factors:

> First, the private interest that will be affected by the official action, second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requisites would entail.

*Id.* at 335, 96 S.Ct. at 903.

We believe that under the *Mathews* balancing test, no hearing was required in advance of the Board's issuing its advisory opinion. As we have noted above, we are not certain of the validity of the University's proprietary interest in having the Board continue to assert jurisdiction over the University's labor relations and are unable to find any interest that may exist to be of extreme importance. This is particularly true in this situation where the Vermont State Labor Board is ready to assert jurisdiction over the University, thereby providing a forum for the peaceful resolution of labor disputes.

Also, given the circumstances of this case, we do not believe an evidentiary hearing would be likely to result in more accurate results. The Board allowed the parties to file briefs and reply briefs. The parties availed themselves of this opportunity by submitting fairly voluminous memoranda. Although the University reserved the right to request a hearing to resolve any factual disputes arising from the par-

ties' submissions, there is no evidence in the record that the University requested such a hearing after written submissions were filed and prior to the Board's decision.

The issue of whether the University is a political subdivision of the State largely turns on questions of historical fact that are matters of public record. Thus, the benefits of an evidentiary hearing—particularly, the opportunity for the factfinder to assess the credibility of witnesses exposed to cross-examination—would not add much to ensure the accurate resolution of this type of issue. Moreover, the Board noted in its advisory opinion that the facts it found relevant to making its decision were undisputed, thus obviating the need for a hearing. *See Fay v. Douds*, 172 F.2d at 725 ("neither the statute, nor the Constitution, gives a hearing where there is no issue to decide.").[14] While there were some disputed facts before the Board, the advisory opinion made it clear that it did not consider such disputed facts in arriving at the Board's decision. *See e.g. University of Vermont and State Agricultural College*, 297 N.L.R.B. No. 42 (1989) at p. 5, n. 10, pp. 10–12, p. 13, n. 23, p. 14, n. 24. Finally, requiring the agency to conduct a hearing on jurisdictional issues would entail a significant expenditure of agency resources.[15]

Similarly, we do not believe that the added protections of judicial review are warranted under the *Mathews* balancing test. Again, the significance of any valid proprie-

tary interest the University has in having the Board continue to assert jurisdiction is diminished by the existence of the alternative state forum. While judicial review would form another safeguard against agency misfeasance, and safeguards are generally laudable, the manner in which the deliberately broad language of the NLRA relates to a particular employer and national labor policy is an issue particularly within the Board's experience and expertise. *Beth Israel Hospital*, 437 U.S. at 500–01, 98 S.Ct. at 2473–74. Practically speaking, a court's review of the Board's decision on a definitional matter would be closely guided by the Board's previous decisions on the issue. *Hawkins County*, 402 U.S. at 605, 91 S.Ct. at 1749–50 (1970) ("The Board's construction of the broad statutory term is, of course, entitled to great respect."). Even abrupt departures in course would be viewed deferentially. *See N.L.R.B. v. Curtin Matheson Scientific, Inc.*, —— U.S. at ——, 110 S.Ct. at 1549 ("a Board rule is entitled to deference even if it represents a departure from the Board's prior policy"). Thus, largely "because it is to the Board that Congress entrusted the task of applying the Act's general prohibitory language" judicial review would not be a rigorous mechanism to ensure that the Board did not misapply the statute in a given case. *See Hearst Publications, Inc.*, 322 U.S. at 131, 64 S.Ct. at 860–61.

---

**14.** If a party can show concrete, significant, factual discrepancies to exist with regard to material issues, due process might require a hearing prior to the Board's denial of jurisdiction by means of an advisory opinion. *See e.g. N.L.R.B. v. Bristol Spring Mfg. Co.*, 579 F.2d 704 (2d Cir.1978).

**15.** The University cites *Hirsch v. McCulloch*, 303 F.2d 208 (D.C.Cir.1962), as authority for the proposition that the Board may not decline jurisdiction by means of an advisory opinion issued without a hearing. In that case, the Board sought to exercise its discretionary power under § 14(c) to decline jurisdiction over the horse racing industry because of the industry's insignificant, in the eyes of the Board, impact on commerce. The court made clear that its primary concern was that the advisory opinion process not be used to place whole industries

under state regulation without the Board giving the issue adequate consideration. Thus, the court held that rulemaking or at least hearings were necessary under the statute and due process before the Board could blackball an entire industry from federal labor regulation. As the *Hirsch* court wrote, "[w]e are firmly of the view that Congress did not intend as to an *entire class or category* that states are to control conduct upon the *mere ipse dixit of the Board*." *Hirsch*, 303 F.2d at 213 (emphasis added.)

This case involves a much more discrete issue than the denial of jurisdiction to a whole industry, and rulemaking or hearings are of less importance here to ensure adequate notice to interested parties and a correct resolution of the issue. Again, the rights of only two parties are involved here, both of which filed extensive submissions, and the determinative facts were not in dispute.

Finally, we are hesitant to question Congress' considered judgment that the "fiscal and administrative burdens" of district court review would significantly impair the important government interest of avoiding industrial strife from labor disputes. In *New York Racing Ass'n,* the Second Circuit dismissed the petitioners' claims that they had been denied due process because there was no judicial review of the Board's decision not to assert jurisdiction, stating that "not every governmental action is subject to review by judges." *New York Racing Ass'n,* 708 F.2d at 56–57. We believe that Congress evinced a clear intent not to allow for district court review of the issue of whether or not the Board would assert jurisdiction in a given case. We also believe that due process does not require such procedural protection before the board declines to assert jurisdiction by means of its advisory opinion process.

### Conclusion

For the foregoing reasons, the motion of the National Labor Relations Board is granted and the University of Vermont's complaint is dismissed.